1  ROBBINS GELLER RUDMAN
      & DOWD LLP
2  SHAWN A. WILLIAMS (213113)
   Post Montgomery Center
3  One Montgomery Street, Suite 1800
   San Francisco, CA  94104
4  Telephone:  415/288-4545
   415/288-4534 (fax)
5  shawnw@rgrdlaw.com
        – and –
6  SAMUEL H. RUDMAN
   MARY K. BLASY (211262)
7  58 South Service Road, Suite 200
   Melville, NY  11747
8  Telephone:  631/367-7100
   631/367-1173 (fax)
9  srudman@rgrdlaw.com
   mblasy@rgrdlaw.com
10
   Attorneys for Plaintiff
11
   [Additional counsel appear on signature page.]
12
                    UNITED STATES DISTRICT COURT
13
                  NORTHERN DISTRICT OF CALIFORNIA
14

15 | CHARLES REIDINGER, Individually and on | ) | Case No. |
   | Behalf of All Others Similarly Situated, | ) | |
16 | | ) | CLASS ACTION |
   | Plaintiff, | ) | |
   | | ) | COMPLAINT FOR VIOLATIONS OF THE |
17 | vs. | ) | FEDERAL SECURITIES LAWS |
   | | ) | |
18 | ZENDESK, INC., MIKKEL SVANE, ELENA | ) | |
   | GOMEZ, ADRIAN McDERMOTT, JOHN | ) | |
19 | GESCHKE, JEFFREY TITTERTON and | ) | |
   | NORMAN GENNARO, | ) | |
20 | | ) | |
   | Defendants. | ) | |
21 | | ) | DEMAND FOR JURY TRIAL |

22

23

24

25

26

27

28

**INTRODUCTION**

Plaintiff Charles Reidinger ("plaintiff"), individually and on behalf of all others similarly situated, by plaintiff's undersigned counsel, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's counsel, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by Zendesk, Inc. ("Zendesk" or the "Company"), as well as media and analyst reports about the Company.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**BACKGROUND AND SUMMARY OF THE ACTION**

1.       This is a securities fraud class action on behalf of all purchasers of Zendesk common stock between February 6, 2019 and October 1, 2019, inclusive (the "Class Period"), seeking to pursue remedies under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder.

2.       Zendesk is a Software as a Service ("SaaS") provider that purports to help clients better communicate with their customers through online customer chats and data analysis.  The Company provides single customer service interface to organizations to manage all their one-on-one customer interactions, track and predict common questions, and provide a seamless path to answers.  The employees of Zendesk's clients are called "agents" of Zendesk, and their customers are Zendesk's "end users."

3.       Throughout the Class Period, defendants disseminated materially false and misleading statements to the investing public and failed to disclose adverse facts pertaining to the Company's business, operations, and financial results.  Specifically, the Company concealed material information and/or failed to disclose that:

(a)       Zendesk's clients had been subject to data breaches dating back to 2016;

(b)       Zendesk was experiencing slowing demand for its SaaS offerings, particularly in Germany, the United Kingdom ("U.K.") and Australia, due in large part to political uncertainty and China trade issues there; and

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS                    - 1 -

(c)    as a result of the foregoing, Zendesk's business metrics and financial prospects were not as strong as defendants had led the market to believe during the Class Period.

4.    On July 30, 2019, Zendesk issued a press release and conducted a conference call to announce its second quarter 2019 ("2Q19") financial results for the period ended June 30, 2019. Zendesk reported net losses that had grown to $54.5 million, or $0.50 per share, which was significantly larger than the $34.4 million, or $0.33 per share, reported in 2Q18, despite the fact that 2Q19 revenues had increased from $141.9 million in 2Q18 to $194.6 million in 2Q19.   The Company also reported revenue growth of 37%, which was below the 38%-41% range the Company had reported over the prior eight quarters.

5.    In addition to the disappointing financial results, Zendesk disclosed that its sales growth in the Europe, Middle East, and Africa ("EMEA") and Asia-Pacific ("APAC") regions "didn't quite live up to [defendants'] own expectations, and lagg[ed] other regions."  For example, growth in the EMEA region fell to 33% year over year, down significantly from the 38% growth reported in 1Q18, 42% during fiscal year 2018 ("FY18"), and 41% during FY17.  Growth in the APAC region fell to 31% in 2Q19, down considerably from the 39% growth reported in 1Q19. Zendesk blamed a mix of macro and operational issues that had been driving the weakness.  With respect to FY19 guidance, the Company cautioned that it was "maintaining a prudent view on the year as [defendants] gain[ed] a better understanding of the dynamics, internal and external, in EMEA and APAC," and thus expected ongoing revenue growth of just 30%.  Zendesk lowered its FY19 outlook for free cash flow from a range of $55-$65 million to a range of just $35-$45 million, citing increased vendor prepayments, capital expenditures and acquisition costs.

6.    Following these disclosures, the price of Zendesk common stock declined precipitously, falling nearly $10 per share from its close of $93.12 per share on July 30, 2019 to close at $83.56 per share on July 31, 2019, on unusually high volume of more than 8.6 million shares traded, or more than twice the average daily volume over the preceding 10 trading days.

7.    Prior to September 24, 2019, a third party alerted Zendesk to the fact that the personally identifiable data ("PID") of its chat and support accounts had been breached.  By September 24, 2019, Zendesk had internally confirmed the size and scope of the breach.  The

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS                                    - 2

Company's internal investigation revealed that some 10,000 accounts opened before November 2016 had been breached, including agent names and contact information, along with user names and hashed and salted agent and end user passwords.  Adversely impacted PID also included Transport Layer Security encryption keys that customers gave to Zendesk and the configuration settings of apps installed from the Zendesk app market or private apps.

8.     On October 2, 2019, Zendesk for the first time publicly disclosed the data breach, stating then that the data breach only affected customers who had signed up prior to November 1, 2016.

9.     On news of the data breach, the price of Zendesk common stock fell another $2.90 per share to close at $69.81 per share on October 2, 2019, again on unusually high volume of more than 3.3 million shares traded.

10.     Meanwhile, with Zendesk common stock trading at fraud-inflated prices throughout the Class Period, the Company's senior executive officers named herein as defendants cashed in, collectively selling approximately 409,000 of their personally held Zendesk shares, reaping more than $32.7 million in proceeds.

**JURISDICTION AND VENUE**

11.     Jurisdiction is conferred by §27 of the Exchange Act.  The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.  This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

12.     Venue is proper in this District pursuant to §27 of the Exchange Act, as Zendesk is headquartered in this District and many of the false and misleading statements alleged herein were disseminated from this District.

13.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

14.     Plaintiff Charles Reidinger purchased Zendesk common stock during the Class Period, as set forth in the accompanying certification incorporated by reference herein, and has been damaged thereby.

15.     Defendant Zendesk is a San Francisco, California-based software development company that provides SaaS products for organizations.  Zendesk common stock is listed and trades on the New York Stock Exchange ("NYSE"), an efficient market, under the ticker symbol "ZEN." As of July 31, 2019, the Company had approximately 110 million shares issued and outstanding.

16.     Defendant Mikkel Svane ("Svane") is, and was at all relevant times, a co-founder and Chief Executive Officer ("CEO") of Zendesk and the Chairman of its Board of Directors.   During the Class Period, defendant Svane sold 250,000 shares of his personally held Zendesk common stock, reaping $19,670,255 in proceeds.

17.     Defendant Elena Gomez ("Gomez") is, and was at all relevant times, Chief Financial Officer ("CFO") of Zendesk. During the Class Period, defendant Gomez sold 42,455 shares of her personally held Zendesk common stock, reaping $3,526,791 in proceeds.

18.     Defendant Adrian McDermott ("McDermott") is, and was at all relevant times, President of Products of Zendesk. During the Class Period, defendant McDermott sold 31,697 shares of his personally held Zendesk common stock, reaping $2,645,174 in proceeds.

19.     Defendant John Geschke ("Geschke") is, and was at all relevant times, Chief Legal Officer & SVP, Administration of Zendesk.  During the Class Period, defendant Geschke sold 48,656 shares of his personally held Zendesk common stock, reaping $3,931,532 in proceeds.

20.     Defendant Jeffrey Titterton ("Titterton") is, and was at all relevant times, Chief Marketing Officer of Zendesk.  During the Class Period, defendant Titterton sold 23,306 shares of his personally held Zendesk common stock, reaping $1,908,697 in proceeds.

21.     Defendant Norman Gennaro ("Gennaro") is, and was at all relevant times, Senior Vice President, Worldwide Sales of Zendesk.  During the Class Period, defendant Gennaro sold 12,842 shares of his personally held Zendesk common stock, reaping $1,026,645 in proceeds.

22.     Defendants Svane, Gomez, McDermott, Geschke, Titterton and Gennaro are sometimes referred to collectively herein as the "Individual Defendants."  Zendesk and the Individual Defendants are referred to herein, collectively, as "defendants."

**DEFENDANTS' SCIENTER**

23.     During the Class Period, defendants had the motive and opportunity to commit the alleged fraud.  Defendants also had actual knowledge of the misleading statements they made and/or acted in reckless disregard of the truth at the time.  In doing so, defendants participated in a scheme to defraud and committed acts and practices and participated in a course of business that operated as a fraud or deceit on purchasers of Zendesk common stock during the Class Period.

24.     Moreover, with the price of Zendesk common stock artificially inflated, the Individual Defendants cashed in, collectively selling approximately 409,000 of their personally held Zendesk shares for *more than $32.7 million* in proceeds.

**SUBSTANTIVE ALLEGATIONS[1]**

25.     Defendant Zendesk is a customer service software company founded in Copenhagen, Denmark in 2007 and now headquartered in San Francisco, California.  The Company has been reporting to the SEC and listed on the NYSE since conducting its initial public stock offering 2014.

26.     According to the Company, the Zendesk product family and platform is purpose-built to help companies deliver the best customer experiences and adapt to changing customer expectations.  Zendesk products unify customer communication and customer data across disparate channels and departments and simplify the process of providing great omnichannel customer service and engagement across self-service, phone calls, live chat, messaging, and email.

27.     Zendesk's "open" and "flexible" customer relationship management ("CRM") platform, Zendesk Sunshine, is built on the public cloud and open standards, which it claims "enabl[es] rapid innovation for [its] customers and enhanc[es] [its] product family."  According to Zendesk, the Company has "evolved from [its] origins in customer service to increasingly help even

---

[1]     All emphasis in bold and italics is added, unless otherwise noted.

the largest organizations understand their customers, and to introduce products and a CRM platform that impact customer experiences and engagement broadly within organizations."

28. The Class Period starts on February 6, 2019. On February 5, 2019, after the close of trading, Zendesk announced its 4Q18 and FY18 financial results for the period ended December 31, 2018. In addition to announcing 4Q18 "revenue [that had] increased 41% year over year to $172.2 million," a 4Q18 "GAAP operating loss of $36.5 million," that its FY18 "revenue [had] increased 39% year over year to $598.7 million," and an FY18 "GAAP operating loss of $137.9 million," the press release issued that day provided 1Q18 and FY19 financial guidance, stating in pertinent part as follows:

**Outlook**

As of February 5, 2019, Zendesk provided guidance for the quarter ending March 31, 2019 and for the year ending December 31, 2019.

For the quarter ending March 31, 2019, Zendesk expects to report:

- Revenue in the range of $178.0-180.0 million

- GAAP operating income (loss) in the range of $(44.0)-(42.0) million, which includes share-based compensation and related expenses of approximately $38.2 million, amortization of purchased intangibles of approximately $2.2 million, and acquisition-related expenses of approximately $1.6 million

\*          \*          \*

For the full year ending December 31, 2019, Zendesk expects to report:

- Revenue in the range of $795.0 - 805.0 million

- GAAP operating income (loss) in the range of $(154.0)-(149.0) million, which includes share-based compensation and related expenses of approximately $154.2 million, amortization of purchased intangibles of approximately $8.8 million, and acquisition-related expenses of approximately $4.0 million

29. On the same day, the Company published a Shareholder Letter, under the names of defendants Svane and Gomez, and conducted a conference call with investors and stock analysts during which they provided additional positive commentary about the Company's then-present business metrics and financial prospects. For example, the Introduction of the Shareholder Letter emphasized that, "[f]or the full-year 2018, [Zendesk] delivered 39% revenue growth – an

acceleration compared to 38% growth for full-year 2017 – and increased [its] operating cash flow margin by approximately three percentage points and free cash flow margin by approximately two percentage points compared to full-year 2017," intimating that the Company was continuing on that trajectory.  The Shareholder Letter also emphasized that, "[a]round the world, companies large and small are seeking to transform their businesses through customer experience, ***and that trend is driving strong demand for our products***," adding that, "[i]n 2019, ***we will continue to capitalize on this trend***."  Reviewing the Company's FY18 performance, the Shareholder Letter noted that, "[w]ith customers in more than 160 countries and territories and approximately half of our revenue outside of the U.S., ***we are seeing strong global demand and revenue growth in every region***," noting that for FY18 "revenue [had] increased . . . 43% in EMEA [and] 47% in APAC."

30.     On February 14, 2019, Zendesk filed its FY18 annual report on Form 10-K with the SEC, which was executed and attested to pursuant to the Sarbanes Oxley Act of 2002 by defendants Svane and Gomez (the "FY18 10-K").  Detailing what "[t]he architecture and deployment of [Zendesk's] software [was] described and guided by," the FY18 10-K emphasized security as one of the "key characteristics" of Zendesk's "Technology," stating in pertinent part as follows:

- **Security**.  Each of our products are [sic] designed to host a large quantity of customer data.  ***We maintain a comprehensive security program designed to help safeguard the security and integrity of our customers' data.  We regularly review our security program.  In addition, we regularly obtain third-party security audits and examinations of our technical operations and practices covering data security***.

31.     Though the FY18 10-K purported to warn that "breaches of data security . . . ***could*** have an adverse effect on [Zendesk's] future operating results," and ***could*** cause it to "lose existing customers or fail to attract new customers" or to "incur significant liabilities" ***if*** its data systems were breached, the purported warnings were themselves materially false and misleading on their face because the Company had ***already experienced*** a data breach dating back to accounts opened before November 2016 that had not yet been disclosed or remedied.  Likewise, the FY18 10-K's statement that, "[b]ecause [its] products can be used to collect and store personal information," "data security concerns ***could*** result in additional costs and liabilities to [it] or inhibit sales of [its] products," and that "the costs of compliance with, and other burdens imposed by, the laws, regulations, and policies

that are applicable to the businesses of [its] customers may limit the use and adoption of, and reduce the overall demand for, [its] products," tacitly and misleadingly stated that the Company's data was then being maintained in a secure state, when it was not.

32.     On April 30, 2019, Zendesk announced its 1Q19 financial results.  In addition to announcing 1Q19 "revenue [that had] increased 40% year over year to $181.5 million" and a 1Q19 "GAAP operating loss of $43.9 million," the press release issued that day provided 2Q19 and updated FY19 financial guidance, stating in pertinent part as follows:

**Outlook**

As of April 30, 2019, Zendesk provided guidance for the quarter ending June 30, 2019 and updated its guidance for the year ending December 31, 2019.

For the quarter ending June 30, 2019, Zendesk expects to report:

- Revenue in the range of $191-193 million

- GAAP operating income (loss) in the range of $(44)-(42) million, which includes share-based compensation and related expenses of approximately $41 million, amortization of purchased intangibles of approximately $2 million, and acquisition-related expenses of approximately $1 million

*          *          *

For the full year ending December 31, 2019, Zendesk expects to report:

- Revenue in the range of $802-810 million

- GAAP operating income (loss) in the range of $(164.0)-(160) million, which includes share-based compensation and related expenses of approximately $165 million, amortization of purchased intangibles of approximately $9 million, and acquisition-related expenses of approximately $4 million

33.     Defendants also published a Shareholder Letter that day, under the names of defendants Svane and Gomez, and conducted a conference call with investors and stock analysts during which they provided additional positive commentary about the Company's then-present business metrics and financial prospects.  For instance, the first sentence of the Introduction to the Shareholder Letter emphasized that Zendesk had begun "2019 by delivering 40% revenue growth in the quarter (year over year), up nearly two percentage points compared to the year-over-year growth achieved for the first quarter of 2018."  The second paragraph of the Introduction again emphasized

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS                                    - 8 -

that "*[d]emand for [Zendesk's] products remains strong* as companies around the world, large and small, seek to transform their businesses by adopting modern software architectures and applications," adding that Zendesk's "growth *is driven by favorable global market trends*."  The Shareholder Letter also emphasized that Zendesk "had *solid revenue growth in every region* in the first quarter of 2019, with revenue up . . . 38% in EMEA [and] 39% in APAC . . . compared to a year ago."

34.     On May 2, 2019, Zendesk filed its 1Q19 quarterly report on Form 10-Q with the SEC, which was executed and attested to pursuant to the Sarbanes Oxley Act of 2002 by defendants Svane and Gomez (the "1Q19 10-Q").  The 1Q19 10-Q adopted the false and misleading statements in the FY18 10-K as detailed above at ¶¶30-31.

35.     The statements referenced above in ¶¶28-34 were materially false and misleading when made because they failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them:

(a)     that Zendesk's clients had been subject to data breaches dating back to 2016;

(b)     that Zendesk was experiencing slowing demand for its SaaS offerings, particularly in Germany, the U.K. and Australia, due in large part to political uncertainty and China trade issues there; and

(c)     that for the forgoing reasons, Zendesk's business metrics and financial prospects were not as strong as represented during the Class Period.

36.     On July 30, 2019, after the close of trading, Zendesk issued a press release and conducted a conference call to announce its 2Q19 financial results.  Zendesk's net losses had grown to $54.5 million, or $0.50 per share, significantly larger than the $34.4 million, or $0.33 per share, reported in 2Q18, despite the fact that 2Q19 revenues had increased from $141.9 million in 2Q18 to $194.6 million in 2Q19.  The revenue growth rate of 37% was well below the 38%-41% range the Company had been reporting over the prior eight quarters.  Zendesk disclosed that its sales growth in the EMEA and APAC regions "didn't quite live up to [defendants'] own expectations, and lagg[ed] other regions."  Growth in the EMEA region fell to 33% year over year, down significantly from the 38% growth reported in 1Q19, 42% during FY18, and 41% during FY17.  Growth in the APAC

1   region fell to 31% in 2Q19, down considerably from the 39% growth reported in 1Q19.  Zendesk

2   blamed a mix of macro and operational issues that had been driving the weakness.  With respect to

3   its FY19 financial guidance, Zendesk emphasized caution, stating that it was "maintaining a prudent

4   view on the year as [defendants] gain[ed] a better understanding of the dynamics, internal and

5   external, in EMEA and APAC," and thus it expected ongoing revenue growth of just 30%.  Zendesk

6   also lowered its FY19 outlook for free cash flow from the prior guidance range of $55-$65 million to

7   a range of just $35-$45 million, citing increased vendor prepayments, capital expenditures, and

8   acquisition costs.

9        37.    On this news, the price of Zendesk common stock declined precipitously, falling

10  nearly $10 per share, from its close of $93.12 per share on July 30, 2019 to close at $83.56 per share

11  on July 31, 2019, on unusually high volume of more than 8.6 million shares traded, or more than

12  twice the average daily volume over the preceding 10 trading days.

13       38.    Then on October 2, 2019, Zendesk disclosed in a blog post that it had experienced a

14  data breach in 2016 involving 10,000 Support and Chat accounts that were activated prior to

15  November 1, 2016.  The Company's blog post stated that email addresses and phone numbers of

16  Zendesk agents were accessed along with passwords.  Zendesk stated that it had been alerted to the

17  breach by a third party on September 24, 2019 and was using an outside team of forensic experts to

18  validate claims of the third party and to determine exactly what data was accessed.  Data exposed

19  reportedly included: names, email addresses, and phone numbers of certain Zendesk end users.

20  Hashed passwords were also exposed.  Zendesk stated it was continuing to investigate the matter and

21  that it was also doing a forced reset of passwords for those users that were activated prior to

22  November 1, 2016 and who had not updated their passwords since that time.

23       39.    On this news, the price of Zendesk common stock fell another $2.90 per share to

24  close at $69.81 per share on October 2, 2019, again on unusually high volume of more than 3.3

25  million shares traded.

26       40.    On October 2, 2019, a blogger at *Cyberscoop.com* posted, in pertinent part, as

27  follows:

28

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS          - 10 -

It's common for companies to learn from partners or other third parties that they have experienced a data breach. Often, when a company is probing its own defenses, it may come upon data that appears to be from a single source, and may point to a breach at another victim. Zendesk has not provided much detail about this incident, but the announcement follows a notification from the delivery service DoorDash[, which] confirmed a breach affected 4.9 million customers, workers and merchants.

41.     Notably, Zendesk's August 2, 2016 Shareholder Letter listed DoorDash as a "noteworthy customer[] that [had] recently joined [it] or expanded with [it]," which would make DoorDash a pre-November 2016 customer of Zendesk.

**APPLICATION OF PRESUMPTION OF RELIANCE:**
**FRAUD ON THE MARKET**

42.     Plaintiff and the Class (defined below) are entitled to a presumption of reliance under *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), because the claims asserted herein against defendants are predicated upon omissions of material fact for which there was a duty to disclose.

43.     Plaintiff and the Class are also entitled to a presumption of reliance pursuant to *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and the fraud-on-the-market doctrine because the market for Zendesk stock was an efficient market at all relevant times by virtue of the following factors, among others:

(a)     Zendesk stock met the requirements for listing and was listed and actively traded on NYSE, a highly efficient market;

(b)     Zendesk regularly communicated with public investors via established market communication mechanisms, including the regular dissemination of press releases on national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(c)     Zendesk was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms. These reports were publicly available and entered the public marketplace.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS                                          - 11

44.     As a result of the foregoing, the market for Zendesk stock promptly incorporated current information regarding the Company from publicly available sources and reflected such information in the price of the stock.  Under these circumstances, all those who transacted in Zendesk stock during the Class Period suffered similar injury through their transactions in Zendesk stock at artificially inflated prices and a presumption of reliance applies.

45.     Without knowledge of the misrepresented or omitted material facts, plaintiff and other Class members purchased Zendesk stock between the time defendants misrepresented and failed to disclose material facts and the time the true facts were disclosed.  Accordingly, plaintiff and other Class members relied, and are entitled to have relied, upon the integrity of the market price for Zendesk stock and are entitled to a presumption of reliance on defendants' materially false and misleading statements and omissions during the Class Period.

**LOSS CAUSATION/ECONOMIC LOSS**

46.     During the Class Period, as detailed herein, defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Zendesk common stock and operated as a fraud or deceit on Class Period purchasers of Zendesk common stock.  As defendants' misrepresentations and fraudulent conduct became apparent to the market, the price of Zendesk common stock fell precipitously, as the prior artificial inflation came out of the stock's price.  As a result of their purchases of Zendesk common stock during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

**CLASS ACTION ALLEGATIONS**

47.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all purchasers of Zendesk common stock during the Class Period (the "Class").  Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families, and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

48.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Zendesk common stock was actively traded on the NYSE.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Zendesk and/or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

49.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

50.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

51.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the Exchange Act was violated by defendants as alleged herein;

(b)     whether statements made by defendants misrepresented material facts about the business, operations, and financial results of Zendesk; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

52.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

### For Violation of §10(b) of the Exchange Act and Rule 10b-5
### Against All Defendants

53.    Plaintiff incorporates ¶¶1-52 by reference.

54.    During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

55.    Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Zendesk common stock during the Class Period.

56.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Zendesk common stock.  Plaintiff and the Class would not have purchased Zendesk common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

## COUNT II

### For Violation of §20(a) of the Exchange Act
### Against All Defendants

57.    Plaintiff incorporates ¶¶1-56 by reference.

58.    The Individual Defendants acted as controlling persons of Zendesk within the meaning of §20(a) of the Exchange Act.  By reason of their positions with the Company, and their ownership of Zendesk common stock, the Individual Defendants had the power and authority to cause Zendesk to engage in the wrongful conduct complained of herein.  Zendesk controlled the Individual Defendants and all of its employees.  By reason of such conduct, defendants are liable pursuant to §20(a) of the Exchange Act.

1

**PRAYER FOR RELIEF**

2

WHEREFORE, plaintiff prays for relief and judgment as follows:

3

A.     Determining that this action is a proper class action, designating plaintiff as Lead

4

Plaintiff, and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil

5

Procedure and plaintiff's counsel as Lead Counsel;

6

B.     Awarding compensatory damages in favor of plaintiff and the other Class members

7

against all defendants, jointly and severally, for all damages sustained as a result of defendants'

8

wrongdoing, in an amount to be proven at trial, including interest thereon;

9

C.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this

10

action, including counsel fees and expert fees; and

11

D.     Awarding such equitable/injunctive or other relief as deemed appropriate by the

12

Court.

13

**JURY DEMAND**

14

Plaintiff demands a trial by jury.

15

DATED:  October 24, 2019

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS

16

17

18

*/s/ Shawn A. Williams*

SHAWN A. WILLIAMS

19

20

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545

21

415/288-4534 (fax)

22

shawnw@rgrdlaw.com

23

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN

24

MARY K. BLASY
58 South Service Road, Suite 200

25

Melville, NY  11747
Telephone:  631/367-7100

26

631/367-1173 (fax)

27

srudman@rgrdlaw.com
mblasy@rgrdlaw.com

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOHNSON FISTEL, LLP
FRANK J. JOHNSON
655 West Broadway, Suite 1400
San Diego, CA  92101
Telephone:  619/230-0063
619/255-1856 (fax)
franki@johnsonfistel.com

Attorneys for Plaintiff

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

CHARLES REIDINGER ("Plaintiff") declares:

1.      Plaintiff has reviewed a complaint and authorized its filing.

2.      Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 05/17/19 | 100 shares | $88.50 |
| | | |
| | | |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| | | |
| | | |
| | | |

5.      Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

ZENDESK

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _____ day of October, 2019.

_____
CHARLES REIDINGER

- 2 -

ZENDESK